UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM G. RAYMOND,<br><br>                  Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                  Defendant. | Case No. 5:17-CV-01112-SHK<br><br>OPINION AND ORDER |

Plaintiff William G. Raymond ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying his application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

/ / /

# I. BACKGROUND

Plaintiff filed an application for DIB on January 23, 2014, alleging disability beginning on October 27, 2010. Transcript ("Tr.") 172-75.[1] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on March 16, 2016, ALJ Dante M. Alegre determined that Plaintiff was not disabled. Tr. 15-38. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on April 17, 2017. Tr. 1-5. This appeal followed.

# II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (citation omitted)). A reviewing

---

[1] A certified copy of the Administrative Record was filed on November 7, 2017. Electronic Case Filing Number ("ECF No.") 20. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps

one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. See id.

Id. at 1098-99.

### B. Summary Of ALJ And Agency's Findings

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2016." Tr. 20. The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since October 27, 2010, the alleged onset date (20 C.F.R. 404.1520(b) and 404.1571 et seq.)." Id.

At step two, the ALJ found that "[Plaintiff] has the following severe impairments: alcohol dependence; alcohol withdrawal with seizures; poly distal neuropathy from alcohol abuse; alcoholic liver cirrhosis; asthma; anxiety disorder; mood disorder; personality disorder; borderline intellectual functioning (20 CFR 404.1520(c))." Tr. 21.

At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in [the Listings]." Id.

5

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except he can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for one hour out of an eight-hour workday; and sit for two hours out of an eight-hour workday. He can frequently balance[,] stoop, kneel, crouch, and crawl. He can also frequently climb, but he can never climb ladders, ropes, or scaffolds. He should further avoid hazards. The claimant is able to perform unskilled work with limited coworker contact and no public contact.

Tr. 23.

At step four, the ALJ found that "[Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565)." Tr. 25.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC] based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1560(c) and 404.1566). Tr. 26. However, the ALJ found that "[i]f [Plaintiff] stopped the substance use, considering [Plaintiff's] age, education, work experience, and [RFC], there would be a significant number of jobs in the national economy that [Plaintiff] could perform (20 CFR 404.1560(c) and 404.1566). Tr. 33. Specifically, the ALJ found that Plaintiff could perform the "medium, unskilled" occupations of "linen room attendant, [Dictionary of Occupational Titles ("DOT")] 222.387-030" and "hand packager, DOT 920.587-018." Id. The ALJ based his decision that Plaintiff could perform the aforementioned occupations "on the [VE's] testimony" from the administrative hearing, after "determin[ing] that the [VE's] testimony [wa]s consistent with the information contained in the [DOT]." Tr. 33-34.

After finding that "[Plaintiff] would be capable of making a successful adjustment to work that exists in significant numbers in the national economy" if Plaintiff "stopped the substance use" at step five, the ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of 203.29." Tr. 34. (internal quotation marks omitted). The ALJ, therefore, found that "[b]ecause the substance use disorder is a contributing factor material to the determination of disability, [Plaintiff] has not been disabled within the meaning of the . . . Act at any time from the alleged onset date through the date of th[e] decision." Id.

### C. Summary Of Plaintiff's Arguments

In this appeal, Plaintiff raises two issues, including whether the ALJ erred in assessing Plaintiff's RFC by: (1) failing to properly consider "relevant medical evidence of record"; and (2) failing to properly consider "Plaintiff's subjective statements of record." ECF No. 25, Joint Stipulation at 4.

### D. Court's Consideration Of Plaintiff's Arguments

#### 1. Plaintiff's Challenge To ALJ's Consideration Of Relevant Medical Evidence

Plaintiff argues that the ALJ erred by "fail[ing] to properly consider relevant medical evidence of record which is supportive of his claim of disability in assessing [his RFC]." Id. at 5. Specifically, Plaintiff argues that the ALJ failed to properly consider Plaintiff's moderate limitations "in his ability to maintain consistent attendance and to perform routine work duties" as set forth by the psychological consultative examiner ("CE"), Dr. Zhang, in the RFC assessment, and by rejecting his low IQ score as assessed by Dr. Zhang. Id. at 7.

##### a. The CE's Findings

The CE's report indicated that the evaluation of Plaintiff included a clinical interview and a series of psychological tests. Tr. 504. One of the tests Plaintiff took was the "Wechsler Adult Intelligence Scale" test, which measures "an individual's fund of general knowledge, psychomotor speed, visual organizational

7

skills, arithmetic reasoning, vocabulary, abstract reasoning, and visual spatial skills." Tr. 507. The results of this test "indicat[ed] that [Plaintiff] is functioning in the extremely low range of intelligence with a Full Scale IQ score of 65." Id. The CE noted in the "[b]ehavior observations" portion of the report that Plaintiff demonstrated "some exaggeration or manipulation" on the day of the examination, but specifically found that Plaintiff's IQ "scores appear to be [a] valid representation of his current intellectual functioning and are consistent with his mental status." Tr. 506-08. The CE opined that Plaintiff was moderately impaired in his ability to "understand, remember, and carry out detailed and complex instructions"; "relate and interact appropriately with co-workers, supervisors, and the public"; "maintain concentration, persistence and pace in common work settings"; and "maintain consistent attendance and to perform routine work duties." Tr. 509-10.

### b. ALJ's Consideration Of The CE's Findings

The ALJ gave "significant weight" to the CE's opinion, but nevertheless gave less weight to portions of the CE's opinion. Tr. 31. Specifically, the ALJ determined that Plaintiff's IQ score that the CE reported was not a valid "reflect[ion] of [Plaintiff's] true cognitive functioning" because the IQ score was inconsistent with other evidence in the record. Tr. 28. The ALJ gave significant weight to the limitations assessed by the CE, however, finding that the "[CE's] assessment [was] consistent with the findings from the consultative examination showing [Plaintiff] had poor insight and difficulty with memory and concentration," and that "such limitations are consistent with [Plaintiff's] history of anxiety with psychomotor agitation." Tr. 31-32.

The ALJ also gave "significant weight…to the opinion of the State agency psychological consultant." Id. (citation omitted). The State agency psychological consultant ("State consultant") report echoed the CE report in finding Plaintiff to have "moderate difficulties in maintaining social functioning" and "moderate

difficulties in maintaining concentration, persistence, or pace." Id. However, in contrast to the CE's report, the State consultant "found [Plaintiff] was able to understand and remember simple routines; maintain adequate concentration, persistence, and pace; sustain a regular schedule for simple routines on a consistent basis; accept instructions from a supervisor in a setting with limited coworker contact, and where public contact is not required; and respond to straightforward, simple changes." Id. The ALJ found "[the] assessment [was] supported by [Plaintiff's] anxiety disorder and treatment records, which showed he often presented with anxiety and psychomotor agitation." Id.

### c. The Parties' Specific Arguments

Plaintiff argues the ALJ failed to consider the CE's determination that Plaintiff is "moderately limited in his ability to maintain concentration, persistence, and pace in common work settings and in his ability to maintain consistent attendance and to perform routine work duties." ECF No. 25, Joint Stipulation at 7. (citation omitted). Plaintiff asserts that the ALJ's RFC assessment failed to accommodate for these limitations without explanation, despite the ALJ's statement that he gave "significant weight" to the CE's opinion. Id. at 6-7.

Plaintiff also argues that the ALJ's finding that the IQ scores were "invalid because the [CE] had stated in his report that there was some evidence of exaggeration of malingering" was "misguided, groundless, and nothing more than a manipulation of the facts of this case" because the CE specifically found that Plaintiff's IQ score of 65 was "a valid test score." Id. (internal quotation marks and citations omitted). Based on this determination, Plaintiff argues that he should have qualified for payment of benefits automatically, "since the ALJ limited Plaintiff physically to light work activities which would fit the requirements of Listing 112.05(c) given his full scale IQ of 65." Id.

Defendant argues that "the Ninth Circuit has expressly held that a limitation to unskilled work captures moderate limitations in several areas, including a

9

moderate limitation in concentration, persistence, or pace." Id. at 18. Further, Defendant asserts that by "limit[ing] Plaintiff to unskilled work with limited coworker contact and no public contact" the ALJ "properly translated Plaintiff's moderate limitations into concrete restrictions." Id. at 18-19. Defendant also argues that "it was not error for the ALJ to give greater weight to some portions of [the CE's] opinion over others or to reconcile any internal conflicts within [the CE's] report" because it is the role of the ALJ to resolve those conflicts. Id.

### 2. Standard To Review ALJ's Analysis Of The CE's Opinion

The RFC is the maximum a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate all of the relevant medical and other evidence, including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and

10

convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

### 3. ALJ's Decision Not Supported By Substantial Evidence

The Court first addresses the ALJ's analysis of the doctors' opinions in assessing Plaintiff's RFC. Here, the ALJ assessed that Plaintiff has the RFC to, in pertinent part, "perform unskilled work with limited coworker contact and no public contact." Tr. 23. This RFC does not properly accommodate for Plaintiff's moderate mental limitations as assessed by the CE. The CE and the State consultant disagree as to Plaintiff's "ability to maintain consistent attendance and to perform routine work duties." Tr. 31. The CE found Plaintiff to be "moderately impaired in his ability to . . . maintain consistent attendance and to perform routine work duties;" whereas, the State consultant found that Plaintiff "was able to understand and remember simple routines; maintain adequate concentration, persistence, and pace; [and] sustain a regular schedule for simple routines on a consistent basis . . . ." Tr. 31, 32. If the ALJ intended to rely on the assessment of the State consultant, and thereby reject the conflicting findings in the

11

CE report, the ALJ must have "provide[d] specific and legitimate reasons that are supported by substantial evidence" for doing so. Trevizo, 871 F.3d at 675. Because the ALJ did not provide any reasons for rejecting the limitations assessed by the CE, the Court finds the ALJ's assessment of Plaintiff's RFC, which is inconsistent with the CE's assessment, was not supported by substantial evidence.

Defendant's response that Plaintiff's moderate mental limitations were adequately captured by a restriction to unskilled work is unpersuasive. Although the ALJ's restriction for unskilled work may encompass Plaintiff's moderate limitations in concentration, persistence, and pace, the RFC does not sufficiently account for Plaintiff's moderate limitations in performing routine work duties and maintaining consistent attendance in the workplace. See, e.g., Morinskey v. Astrue, 458 Fed. Appx. 640, 641 (9th Cir. 2011) (finding that the ALJ erred by failing to analyze or make findings setting forth specific, legitimate reasons for rejecting the examining consultant's opinion that the claimant was moderately impaired in the ability to maintain regular attendance, sustain an ordinary routine, and complete a normal work day or workweek without interruption from his bi-polar disorder); Lewis v. Berryhill, No. 5:16-CV-01754-GJS, 2017 WL 1903103, at *3 (C.D. Cal. May 9, 2017) ("Although the ALJ purportedly gave great weight to [the consultative examiner's] opinion, the ALJ failed to explain why he did not include in the RFC assessment [the consultative examiner's] findings that Plaintiff has moderate limitations in the ability to perform routine work duties, maintain consistent attendance in the workplace, and respond appropriately to usual work situations."). This error warrants reversal.

The Court reserves judgment on the other issues raised by Plaintiff; however, the Court notes that there is a discrepancy between the CE's note that "there [was] some exaggeration or manipulation" during the subjective portion of the examination, and the CE's note that "the . . . scores appear to be [a] valid representation of his current intellectual functioning and are consistent with his

mental status" during the objective testing resulting in Plaintiff's IQ score of 65. Tr. 506, 507-08. The ALJ observed only the former observation of the CE in his unfavorable decision and ignored the latter observation. Thus, it is unclear whether the ALJ considered the CE's express finding that Plaintiff's IQ score was valid, apparently, despite Plaintiff's noted exaggeration or manipulation. Accordingly, this issue, and the potential effect it may have on whether Plaintiff meets Listing 112.05(c), should be examined further upon remand.

## IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." (citation and internal quotation marks omitted)).

IT IS SO ORDERED.

DATED: 8/2/2018

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge